ARMSTRONG v. HURST.

1. DISMISSAL OF APPEAL.—Objections to the hearing of an appeal not considered, because not deemed necessary under the view taken of the case by this court, and there being no formal notice of motion to dismiss.

2. ASSIGNMENT—PARTNERSHIP—CASE CRITICISED.—An assignment by partners of all the partnership property, exacting releases from preferred creditors, is not void as a partial assignment by reason of its failure to include the individual property of the assignors. Trumbo *v.* Hamel, 29 S. C., 520, approved and followed.

3. IBID.—IBID.—CONFESSION OF JUDGMENT.—An assignment of partnership assets, followed several months later by a confession by one of the partners to a creditor pending other suits, after an unsuccessful effort to set the assignment aside had been made and abandoned, did not show an intention to give such judgment creditor a preference.

4. CREDITOR CALLED IN—SCOPE OF ACTION.—*Doubted* whether a creditor, who comes in under a call for creditors in action to construe the assignment and the rights of creditors thereunder, can question the validity of the deed of assignment.

5. ASSIGNMENT—RELEASE—CASE CRITICISED.—A notice signed by attorneys at law, that their clients, naming them, accept the terms of a deed of assignment, and offer releases as thereby required, cannot be accepted as a release. Jaffray *v.* Steedman, 35 S. C., 33, approved and followed.

6. IBID.—IBID.—RATIFICATION.—Formal releases executed by these same parties after the time for releasing had expired, cannot be received as such a ratification of their attorneys' previous offer as will affect the rights of

other creditors which had vested on the expiration of the time for releases to be filed.

Before FRASER and ALDRICH, JJ., Greenville, August and December, 1892.

This was an action by Armstrong, Cator & Co. and others against Hurst, Purnell & Co. and others. The opinion states the case.

*Messrs. Perry & Heyward,* for appellants.

*Messrs. Earle & Mooney,* for plaintiffs.

*Messrs. Haynsworth & Parker,* for assignee.

November 3, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. On the 27th of November, 1891, N. C. Dacus and M. M. Jordan, copartners in trade under the name and style of Dacus & Jordan, executed an assignment to J. C. Rogers of all their partnership property for the benefit of their partnership creditors. The deed of assignment provided amongst other things, after providing for the payment of all proper costs and charges incurred in preparing and executing said assignment, as follows: "And then if the money so realized be insufficient to pay all the creditors of the said Dacus & Jordan, then, in trust, first to pay any debts due the public, and the debts of such of the creditors of the said Dacus & Jordan as may, within sixty days from the date hereof, accept the terms of this assignment and execute a release of their claims against the said Dacus & Jordan, and that the balance, after paying said debts, be distributed among the other creditors of said Dacus & Jordan *pro rata,* without preference or priority."

It appears from the report of the master, to whom it was referred to hear and determine the issues of law and fact, and to call in all the creditors of Dacus & Jordan to prove their demands before him, that within the prescribed time some of the creditors, to wit: J. C. Rogers, A. M. Dacus, and R. B. Ligon, and J. B. Lewis, duly accepted the terms of the assignment

and filed releases of their claims with the assignee, and that on the 26th of January, 1892, Messrs. Perry & Heyward, as attorneys for certain of the creditors therein named, filed with the assignee a notice, of which the following is a copy: "To Mr. J. C. Rogers, assignee, Greenville, S. C.: Take notice that the creditors, whose names appear upon the list hereto attached, with their respective claims against the firm of Dacus & Jordan, hereby accept the terms of the assignment made to you by the firm of Dacus & Jordan (N. C. Dacus and M. M. Jordan), on the 27th day of November, A. D. 1891, and offer releases of their said claims respectively, as required by said assignment," and that none of the other creditors had attempted to comply with the terms of said assignment. It should be here stated that about ten days after the service of the notice just set out, but after the expiration of the sixty days, the creditors therein mentioned executed and delivered formal releases of their claims against Dacus & Jordan.

It also appeared that at the March term, 1892, of the Court of Common Pleas for Greenville County, Smith & Stoughton, and others of the creditors of Dacus & Jordan, brought actions against Dacus & Jordan, to which no answers were filed, and they recovered judgments by default, which were duly entered on the 11th of April, 1892, and transcripts thereof were duly filed, on the same day, in the County of Anderson, where, it seems, N. C. Dacus, one of the members of the firm of Dacus & Jordan, individually owned certain property—real estate. In the meantime, however, N. C. Dacus, on the 7th of April, 1892, confessed judgment in favor of J. C. Rogers for the sum of $635, and a transcript of the same was duly filed in the County of Anderson on the same day. This does not seem to be one of the claims proved against Dacus & Jordan, under the call for creditors, as it does not correspond in amount with either of the claims so proved; and hence we suppose that it was a claim held by Rogers against N. C. Dacus individually, and not a claim against the partnership; though, under the view which we take, it is a matter of no consequence whether our supposition be well or ill founded.

It further appeared that on the —— day of December, 1891,

the appellants, Hurst, Purnell & Co., filed their bill in the Circuit Court of the United States to set aside the assignment, and for the appointment of a receiver, but that, after the appointment of a temporary receiver, that cause was discontinued, and, by consent of the parties, an order was passed directing the temporary receiver to turn over the assets in his hands to the assignee and agent, and making certain provisions for the payment of the costs of the case and the compensation allowed the receiver, the particulars of which need not be stated further than to say that $200 of the compensation allowed the receiver should be paid out of the *pro rata* share of Hurst, Purnell & Co. in the assets of the assigned estate.

The master found, amongst other things, as matter of law, that the parties named above, having accepted and executed releases within the time prescribed, were entitled to be first paid (after expenses, &c.), and that Hurst, Purnell & Co. and the other creditors named in the notice above set out, not having executed releases within the prescribed time, could not be placed in that class. To this report several of the parties filed exceptions, and the case was heard by his honor, Judge Fraser, upon the report and exceptions, who rendered his decree, sustaining some and overruling others of the exceptions, as may be seen by reference to the exceptions and decree thereon set out in the "Case." The decree concluded in these words: "It is, therefore, ordered and adjudged, that in all respects, except as indicated above, the report be confirmed, and that parties have leave to apply for proper orders to carry out the same. Questions not herein passed upon reserved. It is further ordered, that the time for creditors to come in and establish their claims, under the previous order of the court, be extended to the first day of October next."

To this decree the following notice of exceptions was given in due time, to wit: "For the purposes of appeal to the Supreme Court from the final decree in this cause, the defendants, Hurst, Purnell & Co., in behalf of themselves and all others of the creditors of Dacus & Jordan who occupy the same position, except" to the decree of Judge Fraser, upon two grounds, which are set out in the record, but need not be

copied here, as they raise substantially but two questions: 1st. Whether there was error in holding that the notice given on the 26th of January, 1892, above set out, was not a sufficient compliance with the terms of the assignment to place appellants in the class of accepting creditors. 2d. If not, whether there was error in holding that the execution of the releases ten days after the prescribed time had expired, taken in connection with the said notice, was insufficient. Smith & Stoughton, who, though not parties to the original record, had become so, by coming in under the call for creditors and establishing their demands, in part at least, also filed the following exceptions to Judge Fraser's decree, "for the purposes of appeal to the Supreme Court from the final decree in this cause, to wit: For that his honor holds that there is no good reason why the assignment should be set aside, whereas he should have held that, taking into consideration the conduct of N. C. Dacus and J. C. Rogers (before and after the date of the assignment), the form of the assignment, and the confession of judgment by N. C. Dacus to the said J. C. Rogers, it was evidently the purpose of the said N. C. Dacus to give a preference to the said J. C. Rogers over other creditors, and the said assignment and confession of judgment are, therefore, void."

It seems that Judge Fraser in his decree recommitted the report to the master for two purposes only, so far as we can discover: first, to ascertain the correct amount due Smith & Stoughton; second, to extend the time allowed creditors to come in and prove their claims. In accordance with this portion of the decree, the master made a second report, ascertaining the correct amount due Smith & Stoughton, and reporting other claims established. This report came before his honor, Judge Aldrich, with exceptions thereto, as we presume, though none are set out in the "Case," and Judge Aldrich rendered his decree, confirming this second report of the master, and directing, amongst other things, that the assignee and agent of the creditors do pay out the assets to the several creditors in accordance with their rights as ascertained by the decree of Judge Fraser. Notice of appeal from this decree was given by Messrs. Perry & Heyward, as attorneys for the defendants; but the only

exceptions we find in the record are those of Hurst, Purnell & Co. and others (who the "others" are is not stated), and of Smith & Stoughton, those of the former making the same points substantially as were made in their exceptions to Judge Fraser's decree, and those of the latter making the same points as was made in their exceptions to Judge Fraser's decree, and in addition thereto the further point that the assignment "being a partial assignment requiring releases, it is void upon its face."

Before going into a consideration of the questions raised by these exceptions, it is necessary to notice certain preliminary objections to the hearing of these appeals, raised by counsel for respondents in their argument here, based upon the ground that Judge Fraser's decree was a final decree, at least so far as the rights of Hurst, Purnell & Co. and others standing in their position are concerned, and there being no notice of appeal from that decree, these appellants have no standing in this court, and that Smith & Stoughton's appeal cannot be considered for the same reason, as well for the further reason that these last named appellants have no such connection with the record as would entitle them to appeal. But, under the view which we take of this case, we do not deem it necessary to consider these objections, of a somewhat technical character, especially as they were not taken by any formal notice of a motion to dismiss the appeals, and we shall, therefore, pass them by without expressing or even intimating any opinion as to whether such objections are well or ill founded.

Coming, then, to a consideration of the questions presented by the exceptions, we propose to take them up in what seems to be their logical order, without regard to the order in which they are presented in the record. First, whether there was any error on the part of Judge Fraser in holding that there was no good reason why the assignment should be set aside. This involves two inquiries: first, whether it was void as a partial assignment requiring releases; second, whether it was rendered void on account of the conduct of the parties, N. C. Dacus and J. C. Rogers, evincing an intention to give J. C. Rogers an unlawful preference, by the terms of the assignment and the confession of judgment.

The first inquiry is conclusively answered by the recent decision of this court, in the recent case of *Trumbo* v. *Hamel*, 29 S. C., 520, where it was held that an assignment by a copartnership of all its partnership property for the benefit of its partnership creditors, and containing provisions for releases, was not void, as a partial assignment, though it did not embrace the individual property of one of the partners. As was well said by Mr. Justice McGowan, in that case: "A copartnership is a distinct entirety, entirely separate from that of any of its members, and we know of no reason why it may not assign its property for the payment of its debts without including the individual property of the different partners." Here, as in that case, the assignment embraced all of the partnership property, as found by the master, to which finding there was no exception, and there is no reason why the fact that it did not also embrace individual property of one of the copartners, N. C. Dacus, should render it invalid. There was no finding of fact, and no testimony upon which such a finding of fact could have been based, either that there was any fraud intended, or that the fact that one of the copartners had individual property was concealed from the creditors.

2d. As to the second inquiry, there was a like absence of any evidence tending to show any fraud in the conduct of the parties, and surely the confession of judgment to Rogers by one of the partners, made several months after the execution of the assignment, and after an effort had been made and abandoned to set aside the assignment, could not possibly have the effect of bringing this case within the rule laid down in the cases from *Wilks* v. *Walker*, 22 S. C., 108, down to *Putney* v. *Friesleben*, 32 S. C., 492. The act of making the assignment, and the act of confessing the judgment several months afterwards, were the acts of two different and distinct persons in the eye of the law—the copartnership and one of its individual members—and it would require much more evidence than we have been able to find in this record to bring these two acts together as parts of the same transaction. Besides, it is more than questionable whether the issues sought to be raised by the exceptions of Smith & Stough-

ton are not so wholly beyond the scope of the pleadings in this case as to preclude the court from considering them. The action was brought for the purpose, as we learn from the "Case," of construing the assignment and ascertaining the rights of the parties under it. This necessarily assumes the validity of the assignment; and to allow one who is not a party to the original record, and only became so by coming in under the call for creditors, to attack the assignment, would, to use no harsher term, certainly be anomalous. These exceptions of Smith & Stoughton must, therefore, be overruled.

It only remains to consider the questions raised by the exceptions of Hurst, Purnell & Co. and others. Here, too, we think that the first question presented by these exceptions is conclusively determined by the recent decision of this court, in the case of *Jaffray* v. *Steedman*, 35 S. C., 33, adversely to the appellants. That case decides distinctly that there must be not only an acceptance of the terms of the assignment, but also a release. Here the paper relied upon, a copy of which is set out above, is simply a notice, signed by the attorneys of said creditors, that such creditors "hereby accept the terms of the assignment * * * and offer releases of their said claims, respectively, as required by said assignment," but no releases were executed, either by the creditors or their attorneys, within the prescribed time. The fact that the paper contained not only an acceptance of the terms of the assignment, but an *offer* to release, cannot avail these appellants, for, as is said in Bur. on Assign., § 485, "where a release is required by the assignment, it must be actually executed by the creditor; a mere *offer* to execute is not sufficient;" and the author cites, in support of this proposition, the case of *Pearpoint* v. *Graham*, 4 Wash. C. C., 232, which was a much stronger case than this; for there the trustee, or assignee as he is called here, under the assignment, gave public notice that a release would be prepared by him for the signature of the creditors, and one of the creditors called upon the trustee, before the expiration of the sixty days, and offered to execute the release, but was informed by him that the instrument had not been prepared; and yet it was held that the

42—39

offer was not tantamount to a release, and that the creditor was, nevertheless, bound to execute a release in due form within the prescribed period. The reason of this ruling, doubtless, was that the object being to fix the rights of the parties at the time specified, a mere offer, which might be withdrawn before it was accepted and acted upon, would not be sufficient. But, in addition to this, it appears that this paper was signed by the attorneys of the creditors—attorneys at law, *not* attorneys in fact—and it is settled that an attorney at law has no power to execute a release of his client's claims. *Gilliland* v. *Gasque,* 6 S. C., 406; *Kirk's Appeal,* 87 Penn., 243; rsported, also, in 30 Am. Rep., 357.

The only remaining inquiry is whether the execution by the creditors themselves of formal releases, ten days after the expiration of the time limited, would not have the effect of ratifying and confirming the previous action of their attorneys, so as to give such action effect from the day when it was taken. It seems to us very obvious that such cannot be the effect of the subsequent so-called ratification. The object being, as we have said, to fix a specified time when the rights of the parties shall become vested by a compliance with the prescribed conditions, it is very clear that when the rights of some of the creditors have thus become vested, no subsequent act of other creditors can be permitted to divest or disturb such vested rights. If the attorneys had the right to execute releases, then no subsequent ratification would be necessary ; but if they did not have such right, then their action could not bind their clients until ratification was made. But this becomes unimportant under the view which we have taken that, even if the attorneys had the power to execute releases, they did not in fact exercise such supposed power; and hence in no view of the case could these appellants come within the class of creditors who had accepted and released within the prescribed time.

The judgment of this court is, that the judgments both of Judge Fraser and Judge Aldrich be affirmed.